UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SARAH NATHREEN NAKANWAGI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EXECUTIVE OFFICE of the ) <br> TRIAL COURT, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br> 23-10533-FDS |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

**SAYLOR, C.J.**

This is a workplace discrimination and retaliation action.  Plaintiff Sarah Nakanwagi has brought suit against her former employer, the Executive Office of the Massachusetts Trial Court, alleging violations of a variety of federal and state laws.  In essence, the complaint alleges that Nakanwagi was sexually harassed and discriminated against in her workplace, and that the Executive Office failed to protect her from that hostile environment.  She is proceeding *pro se*.

Defendant has moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.  For the following reasons, the motion will be granted in part and denied in part.

I.  **Background**

  A.  **Factual Background**

Unless otherwise noted, the facts are drawn from the complaint, documents referred to or attached to that complaint, and other filings concerning defendant's motion to dismiss.[1]

Sarah Nakanwagi is a resident of Waltham, Massachusetts. (Compl. at 1). She was born in Uganda, moved to the United States in September 2014, and was naturalized as an American citizen in February 2020. (*Id.* ¶¶ 1-2).

In 2021, Nakanwagi was hired to be the Head Account Clerk at the Executive Office of the Trial Court ("Executive Office") at the Brighton Division of the Boston Municipal Court. (*Id.* ¶ 7).

According to the complaint, soon after Nakanwagi began working at the Executive Office, she began to be harassed by "a supervisor" named "Paula." (*Id.* ¶ 17). The complaint alleges that Paula made demeaning comments about Nakanwagi, yelled at her, instructed her to wear wigs or dress in certain styles, and encouraged her to date another court employee. (*Id.* ¶¶ 17-30). It alleges that Paula's treatment made Nakanwagi physically ill and that she "dreaded" going to work. (*Id.* ¶ 25). Her vulnerability to harassment was exacerbated by a lack of entry credentials for the office she shared with Paula. (*Id.* ¶¶ 36-37).

On May 26, 2021, Nakanwagi reported Paula's actions to two other court employees,

---

[1] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The Court may also take judicial notice of both the EEOC right-to-sue letter and charge as public records. *See Gallo v. Bd. of Regents of Univ. of California*, 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) ("[T]he Court may consider both the EEOC right to sue letter and the EEOC charge . . . as public records subject to judicial notice."); *see also Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (a court deciding a motion to dismiss may consider public records that would otherwise be subject to judicial notice donder Fed. R. Evid. 201).

Eric Donovan and Sheila Lawn. (*Id.* ¶ 26). Those employees thanked her for bringing Paula's conduct to their attention and told her that they would inform the human resources office of the issue. (*Id.* ¶ 39). Nearly one month later, the Executive Office placed Nakanwagi on administrative leave while another employee investigated her complaint. (*Id.* ¶ 44).

On June 30, 2021, Nakanwagi filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the Massachusetts Commission Against Discrimination (MCAD). Those complaints alleged that the Executive Office discriminated against her on the basis of national origin, sex, and had retaliated against her for raising a complaint. (Def. Exs. 1 and 2). The complaints were terminated prior to her seeking relief in this court, at which point the EEOC issued a right-to-sue letter. (*See* Compl. Ex. 1).

After the administrative complaints had been filed, the investigator assigned by the Executive Office to examine Nakanwagi's grievances recommended that she be fired. (Compl. ¶ 47). She was then terminated from her position on September 6, 2021. (*Id.* ¶ 48).

B.      **Procedural Background**

On March 9, 2023, plaintiff filed suit in this court. The complaint cites various statutes and constitutional provisions, most of which are listed as bases for jurisdiction. (*See* Compl. at 2). In light of plaintiff's *pro se* status, the Court will endeavor to construe the claims based on the cited statutes and the content of the complaint.

The primary claims appear to arise under Title VII, 42 U.S.C. § 2000e, *et seq.*, for discrimination based on a hostile work environment, derived from sexual harassment (Count 1), discrimination on the basis of national origin (Count 2), and retaliation for plaintiff's internal complaint (Count 3) and her EEOC complaint (Count 4). The complaint separately raises a claim under Title VI, 42 U.S.C. § 2000d, *et seq.* (Count 5).

The complaint also asserts claims under federal civil-rights laws, including 42 U.S.C.

3

§§ 1981, 1983, and 1985 (Counts 6-8), arising from the same alleged discriminatory conduct. It correspondingly asserts direct constitutional claims under the First, Fourth, Thirteenth, and Fourteenth Amendments (Counts 9-12).

It next claims violations of a collection of federal statutes: Title I of the Americans with Disabilities Act (ADA) (Count 13); § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (Count 14); the Violence Against Women Act (VAWA), 34 U.S.C. § 12471, *et seq.* (Count 15); and the Immigration and Nationality Act (INA), 8 U.S.C. § 1324b (Count 16).

Finally, it asserts claims under a variety of Massachusetts statutes, including Mass. Gen. Laws chs. 260, 93A, 151B, 214, and 149 (Counts 17-21).

Defendant has moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

**II.     Standard of Review**

    **A.     Fed. R. Civ. P. 12(b)(1)**

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted. *Id.* When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

    **B.     Fed. R. Civ. P. 12(b)(6)**

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences

therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

      **C.**     <u>***Pro Se* Pleadings**</u>

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also Instituto de Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. June 23, 1997) (per curiam)).

### III. Analysis

Defendant has moved to dismiss the complaint on the grounds that many of the asserted claims are barred by the Eleventh Amendment; that certain claims are improperly pleaded; that plaintiff failed to exhaust certain available remedies with the EEOC; and that the complaint fails to state a claim upon which relief can be granted under Title VI and Title VII.

#### A. Claims Barred by Sovereign Immunity

Defendant has moved under Rule 12(b)(1) to dismiss the civil-rights and direct constitutional claims (Counts 6-13), the ADA claim (Count 13), and the state-law claims (Counts 17-21) on the ground that it is an arm of the state protected from suit by the Eleventh Amendment.

##### 1. Sovereign Immunity

"As a general matter, states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent." *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002) (quotations omitted); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought."). This immunity extends to any entity that is an "arm of the state." *Wojcik*, 300 F.3d at 99. The Eleventh Amendment has two exceptions: "First, Congress may abrogate a State's immunity by expressly authorizing such a suit pursuant to a valid exercise of power. Second, a State may waive its sovereign immunity by consenting to be sued in federal court." *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 49 (1st Cir. 2003) (citations omitted). Eleventh Amendment immunity is jurisdictional in nature, and "absent waiver, neither a State nor its agencies acting under its control may be subject to suit in federal court." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy Inc.*, 506 U.S. 139, 144 (1993).

Here, the Executive Office, as part of the Massachusetts Trial Court, is an "arm of the state" and is thus protected by Eleventh Amendment immunity. *See Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) (finding that the Massachusetts trial court is entitled to sovereign immunity); *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (noting that sovereign immunity extends to state instrumentalities).

As explained below, neither of the two exceptions to Eleventh Amendment immunity applies to any of the claims set forth in Counts 6 through 21. Those counts will therefore be dismissed on that basis.

### 2.     Counts 6-8:  Civil Rights Claims

The Eleventh Amendment bars claims brought under 42 U.S.C. §§ 1981, 1983, and 1985, as there has been no congressional abrogation of sovereign immunity as to those types of claims. *See Johnson v. Walgreen*, 980 F.2d 721 (1st Cir. 1992) (per curiam) (affirming a finding of sovereign immunity against claims under §§ 1981 and 1985).

Furthermore, and in any event, those statutes do not apply to state agencies. For example, to state a valid claim under § 1983, a complaint must allege that some "person" acting under color of state law deprived the plaintiff of "rights, privileges or immunities secured by the constitution." 42 U.S.C. § 1983. It is well-settled, however, that neither a state nor its agencies or officials are "persons" within the meaning of § 1983. *See Poirier v. Massachusetts Dep't of Corr.*, 558 F.3d 92, 97 & n.6 (1st Cir. 2009); *Brady v. Dill*, 24 F. Supp. 2d 129, 130 (D. Mass. 1998) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)); *see also Cook v. McLaughlin*, 917 F. Supp. 79, 82 (D. Mass. 1996).

Counts 6 through 8 will accordingly be dismissed.

### 3.     Counts 9-12:  Direct Constitutional Claims

The complaint asserts direct claims under the First, Fourth, Thirteenth, and Fourteenth

7

Amendments of the U.S. Constitution. It does not allege any specific facts or allegations under those amendments beyond referring to them as bases for this court's jurisdiction.

Section 1983 is the mechanism through which a plaintiff can bring direct constitutional claims. *See Sacred Feather v. Merrill*, 2008 WL 2510100, at *2 (D. Me. June 19, 2008), *adopted*, 2008 WL 4791897 (D. Me. Oct. 29, 2008) (citing courts finding no direct cause of action under the U.S. Constitution). Without a viable § 1983 claim, there is no vehicle to pursue any direct claims. *See Colon Berrios v. Hernandez Agosto*, 716 F.2d 85, 88 (1st Cir. 1983) ("[M]ay one whose cause of action under 42 U.S.C. § 1983 is barred by an accepted judicial interpretation of that act, avoid that bar by recategorizing the claim? The answer is 'No.'").

Counts 9 through 12 will accordingly be dismissed.

### 4. Count 13:  Americans with Disabilities Act

The complaint also asserts a claim under Title I of Americans with Disabilities Act, which prohibits discrimination in the workplace. *See* 42 U.S.C. § 12112. The Supreme Court has determined that the ADA does not abrogate the sovereign immunity of the states from suits for money damages. *See Board of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001). Count 13 is therefore barred by the Eleventh Amendment and will be dismissed.

### 5. Counts 17-21:  State-Law Claims

The complaint asserts claims under several Massachusetts statutes, including Mass. Gen. Laws chs. 260, 93A, 151B, 214, and 149. The Eleventh Amendment bars a federal court from hearing suits brought under state law against states or their officers, absent specific waiver. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984). None of the statutes cited by the complaint contain such a waiver. Accordingly, Counts 17 through 21 will be dismissed.

### B.     Counts 14-16

Defendant has also moved to dismiss Counts 14 through 16 under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

#### 1.     Count 14:  Rehabilitation Act

The complaint cites § 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, in both the "basis for jurisdiction" and "relief" sections.

To state a claim under the Rehabilitation Act, a plaintiff must show "(1) that she is disabled; (2) that she sought services from a federally funded entity; (3) that she was "otherwise qualified" to receive those services; and (4) that she was denied those services solely by reason of her disability." *Lesley v. Hee Man Chie*, 250 F.3d 47, 53 (1st Cir. 2001) (quotation omitted). As relevant here, the fourth element restricts claims to circumstances where the adverse action alleged by a plaintiff was exclusively caused by her claimed disability, not due to any other issue. *Leary v. Dalton*, 58 F.3d 748, 752 (1st Cir. 1995) ("Section 504 . . . continues to require a showing that the plaintiff's disability was the *sole* reason for the defendant's adverse action.").

Here, the complaint alleges a host of alleged causes for the adverse action plaintiff experienced, including discrimination and retaliation. Because she has alleged those alternative grounds, not solely a denial of services based on her disability, Count 14 will be dismissed.

#### 2.     Count 15:  Violence Against Women Act

Count 15 cites the Violence Against Women Act (VAWA), 34 U.S.C. § 12471, *et seq.* Although the complaint describes an assault plaintiff apparently suffered in Arizona in 2015 (Compl. ¶ 3-6), it does not allege any facts, plausible or otherwise, that the Executive Office perpetrated any act that would be actionable under VAWA. Moreover, the Supreme Court has held that the private cause of action created by VAWA is unconstitutional. *See United States v. Morrison*, 529 U.S. 598, 617 (2000) (holding the federal civil remedy provision of VAWA

unconstitutional); *United States v. Morales-De Jesus*, 372 F.3d 6, 10 (1st Cir. 2004); *Malouf v. Benson*, 2018 WL 10155427, at *3 (D. Mass. Aug. 23, 2018).  Count 15 will accordingly be dismissed.

### 3. Count 16:  Immigration and Nationality Act

Count 16 asserts a claim under § 1324b of the Immigration and Nationality Act, 8 U.S.C. § 1324b, which prohibits unfair employment practices because of an individual's national origin or immigration status.  The statute provides that "[n]o complaint may be filed respecting any unfair immigration-related employment practice occurring more than 180 days prior to the date of the filing of the charge with the Special Counsel."  8 U.S.C. § 1324b(d)(3).  "An individual may initiate a private action only if the [Special Counsel] fails to file a complaint within 120 days of receiving a claim."  *Weiss v. City Univ. of N.Y.*, 2019 WL 1244508, at *12 (S.D.N.Y. Mar. 18, 2019); *see also Trivedi v. Gen. Elec. Co.*, 2020 WL 9744754, at *10-11 (D. Mass. Aug. 13, 2020), *adopted*, 2021 WL 2229088 (D. Mass. May 27, 2021), *aff'd*, 2022 WL 1769136 (1st Cir. May 3, 2022).

Here, the complaint does not allege that plaintiff ever filed a charge with the Office of Special Counsel.  Nor is there any allegation that office failed to file its own complaint within 120 days of receiving any such charge.  The complaint therefore fails to allege sufficient facts showing that plaintiff either filed a charge within the statutory 180-day limit, or exhausted her administrative remedies as required by that statute.  Plaintiff has not moved for leave to amend her complaint to cure this defect.  Count 16 will accordingly be dismissed.

## C. Employment-Discrimination Claims

### 1. Count 5:  Title VI

Count 5 asserts a claim under Title VI of the Civil Rights Act of 1964.  That statute provides that "[n]o person in the United States shall, on the ground of race, color, or national

origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  As relevant here, Title VI may only provide a cause of action to challenge discriminatory employment practices when "a primary objective of the federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3.

Here, the complaint does not allege that the Executive Office receives any federal funding with an employment-related purpose.  Plaintiff has not sought leave to amend her complaint to address that deficiency.  Accordingly, Count 5 will be dismissed.  *See Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, 2019 WL 3754023, at *9 (D. Mass. Aug. 8, 2019).

### 2.     Counts 1-4:  Title VII

The complaint further asserts a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, which prohibits an employer from discriminating against an employee based on their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII also prohibits requiring an employee "to work in a discriminatorily hostile or abusive environment." *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir. 2006) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).  The Eleventh Amendment bar does not apply to suits for monetary damages for employment discrimination under Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

The complaint appears to allege (1) a hostile work environment claim based on sexual harassment and national origin discrimination (Counts 1 and 2) and (2) a retaliation claim arising

out of her internal and EEOC complaints (Counts 3 and 4).[2]  Defendant contends that none of those claims have been adequately pleaded under Rule 12(b)(6), and that the claim of retaliation based on the EEOC complaint should be barred for failing to exhaust administrative remedies.

### a. Hostile Work Environment

The principal contention of the complaint is that plaintiff was forced to endure a discriminatory hostile work environment created by Paula, based on a pattern of sexual harassment and discrimination based on national origin.

To plead a claim of a hostile work environment under Title VII, the complaint must allege six elements:  (1) that plaintiff is a member of a protected class; (2) that she encountered unwelcome harassment; (3) that the harassment was based on race, color, or national origin; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that the conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and the victim perceived it to be so; and (6) that a basis for employer liability has been established. *Valentin-Almeyda*, 447 F.3d at 94.

Here, there is no question that the first five elements have been pleaded in the complaint. It alleges that Nakanwagi is a Ugandan woman (and thus a member of two protected classes); that she was harassed by Paula based on her sex and national origin; that harassment was both severe and pervasive; and, if true, both subjectively and objectively offensive.  The sixth element, however, requires more careful consideration.

Defendant contends that the complaint fails to allege employer liability because it does

---

[2] The EEOC complaint, filed before Nakanwagi's termination, likewise alleged discrimination based on sexual harassment, national origin, and retaliation based on her internal complaint.  (ECF No. 12-2 at 2).

12

not define Paula's role or responsibilities, and asserts that Paula was merely a coworker, not a supervisor. A plaintiff asserting a hostile-environment claim "must satisfy different standards . . . depending on whether the harasser is a supervisor or co-employee." *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 7 (1st Cir. 2011). To legally qualify as a supervisor, the person must have "actual authority," which "primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee." *Velazquez-Perez v. Devs. Diversified Realty Corp.*, 753 F.3d 265, 271 (1st Cir. 2014) (quoting *Noviello*, 398 F.3d at 96). "When coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment . . . an employer can only be liable if the harassment is causally connected to some negligence on the employer's part." *Id.* (citing *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005)). This causal connection exists if "the employer knew or should have known about the harassment yet failed to take prompt and appropriate remedial action." *Id.* (citing *Crowley v. L.L. Bean Inc.*, 303 F.3d 387, 401 (1st Cir. 2002)).[3]

Here, the complaint alleges that Paula was "a supervisor." (Compl. ¶ 17). It does not provide any further details as to her precise role but does allege that she was in a position of authority and that plaintiff was subjected to a hostile environment as a result. (Compl. ¶ 48). Whether that is true is not the relevant issue at this stage. The complaint contains sufficient facts to plausibly support a claim that Paula was a supervisor who created a hostile work environment, which in turn states a claim of employer liability against defendant.

Even assuming, however, that Paula was only a coworker, the complaint may be construed to allege sufficient facts to preclude dismissal. It alleges that Paula repeatedly

---

[3] By contrast, when alleged misconduct is attributable to a supervisory employee with immediate or higher authority over a victimized employee, an employer may be vicariously liable for the resulting hostile work environment without a showing of actual or constructive notice. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

engaged in harassing conduct in the office and that a member of the public reported that conduct to defendant on at least one occasion. (Compl. ¶ 43). Moreover, the complaint asserts that plaintiff reported Paula's conduct to two supervisory employees, that there was an investigation, and that the result of that process was her termination. Because the allegations support a plausible inference that defendant knew or should have known of misconduct by its employees and purportedly failed to act on that knowledge to protect plaintiff, the complaint sufficiently states a claim for a hostile work environment.

### b. Retaliation

As to the retaliation claims, defendant first raises a procedural objection that the complaint includes facts related to the internal investigation and plaintiff's termination that were not included in her EEOC complaint.

A failure to exhaust administrative remedies is an affirmative defense that defendant bears the burden of pleading and proving. *Owens v. West*, 182 F. Supp. 2d 180, 190 (D. Mass. 2001); *see also Fisher v. Town of Orange*, 885 F. Supp. 2d 468, 477-78 (D. Mass. 2012). A court will only dismiss a claim based on an affirmative defense when "the facts establishing the defense are clear on the face of the plaintiff['s] pleadings and there is no doubt that the plaintiff['s] claims are barred." *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 345 (2023) (citations and quotations omitted).

In Title VII cases, "[a] claim of retaliation for filing an administrative charge with the EEOC is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies." *Franceschi v. U.S. Dep't of Veterans Affs.*, 514 F.3d 81, 86 (1st Cir. 2008) (citing *Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001)). Under that exception, "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency . . . ." *Clockedile*, 245 F.3d at 6.

Here, plaintiff's EEOC complaint alleged that she was placed on administrative leave as retaliation for filing an internal complaint. (ECF No. 12-2 at 2). It does not assert any claims concerning the conduct of defendant's internal investigation or plaintiff's termination. However, defendant does not dispute that the conclusion of the investigation and plaintiff's subsequent termination only occurred after the EEOC complaint was filed. The relevant question, then, is whether the later retaliation was "reasonably related to and [grew] out of" the same conduct that gave rise to the first EEOC complaint. *See Clockedile*, 245 F.3d at 6. It appears that it did, given that the investigation and termination in question were the direct result of plaintiff's initial complaints. Under the circumstances, the retaliation claim will not be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies.

Defendant further contends that the complaint does not adequately plead the substantive elements of a retaliation claim. Title VII makes it an unlawful act for an employer "to discriminate against any individual . . . because [s]he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). To state a claim under that provision, the complaint must allege that (1) plaintiff engaged in protected activity, (2) she suffered some materially adverse action, and (3) the adverse action was causally linked to her protected activity. *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007).

Here, construed liberally, the complaint adequately alleges all three of the required elements. First, plaintiff allegedly engaged in two protected activities—filing an internal complaint and an EEOC complaint. *See Ruffino v. State St. Bank & Tr. Co.*, 908 F. Supp. 1019, 1045 (D. Mass. 1995). Second, the complaint alleges that she suffered adverse action as a result of those activities—that is, being placed on administrative leave and then fired. (Compl. ¶¶ 44-48). Third, it seems to assert that she was fired, at least in part, because of those complaints.

(Compl. ¶ 48). Construing the complaint broadly in light of plaintiff's *pro se* status, those allegations are sufficient to state a retaliation claim under Title VII.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is DENIED as to Counts 1 through 4, and GRANTED as to the remaining counts.

**So Ordered.**

Dated: January 3, 2024

/s/ F. Dennis Saylor IV
F. Dennis Saylor, IV
Chief Judge, United States District Court